YONKERS SAVINGS BANK, Plaintiff, *v.* THE YONKERS SAVINGS AND LOAN ASSOCIATION, Defendant.

Supreme Court, Westchester County, September 16, 1940.

*Bleakley & Harding,* for the plaintiff.

*Scrugham & Arbuckle,* for the defendant.

J. ADDISON YOUNG, Official Referee. This action was brought by the plaintiff, Yonkers Savings Bank, to restrain the defendant, The Yonkers Savings and Loan Association, from doing business

under that name, on the ground that the defendant's name is so similar to plaintiff's name as to be calculated to cause people of ordinary intelligence and experience to believe that the defendant is a part of or in some way connected with the plaintiff and that, as a result, plaintiff's business will be damaged.

Yonkers Savings Bank was created by special act of the Legislature in 1854 (Laws of 1854, chap. 214), and has done business in the city of Yonkers ever since. It is a very substantial institution. Its deposits are in the neighborhood of $24,000,000, and its assets are approximately $28,000,000. The defendant has conducted its business in the city of Yonkers since 1888. It was organized under the name, The Yonkers Building and Loan Association. In May, 1937, with the consent of the Superintendent of Banks of the State, it changed its name to The Yonkers Savings and Loan Association, and has since conducted its business under that name. Apparently this change was made to conform to a statute passed in 1914 (Laws of 1914, chap. 369), providing that building and loan associations in the State should have the word " savings " incorporated in the title. This law did not apply to the defendant as it was incorporated prior to 1914, but it was deemed to be advisable for the sake of uniformity to conform to that law. The defendant's assets, between June 30, 1936, and December 31, 1939, varied from $2,261,000 to about $3,592,000. The two institutions are located within a few blocks of each other on Broadway in the city of Yonkers. Both institutions are under the supervision of the Banking Department of the State. While there is a difference in the form of incorporation as well as in their business, it must be conceded that both these parties secure their business from the same types of people and I believe are generally regarded as engaged in the same line of business. Both receive savings deposits and make loans upon real estate.

The rule applicable to cases of this kind has been clearly laid down by the courts. In *Eastern Construction Co., Inc.,* v. *Eastern Engineering Corp.* (246 N. Y. 459) the court said: " Justification, if any, for the injunction [restraining defendant from using the word ' Eastern ' as part of its corporate name] must rest upon a finding that the corporate name which the defendant had adopted, with the sanction of the State, is so similar to the name under which the plaintiff conducts its business that the public may be confused and that some persons may do business with the defendant in the belief that they are dealing with the plaintiff."

In *Buffalo Typewriter Exchange, Inc.,* v. *McGarl* (240 N. Y. 113, 117) the court said: " It must be assumed that the public will use reasonable intelligence and discrimination with reference to

the names of corporations with which they are dealing, or intend to deal, the same as with individuals having the same or similar names."

In *Corning Glass Works* v. *Corning Cut Glass Co.* (197 N. Y. 173, 180) it was said that, in actions of this character, " the law does not justify interference in behalf of ignorant, or careless, persons."

In the case of *Matter of Bank of Attica* (12 N. Y. Supp. 648) it was said: " It is obvious that no general rule can be suggested by which to measure the degree of similarity to be allowed in the names of two corporations of this character. The question simply addresses itself to the good sense and sound judgment of the court, whether, in the particular case, the proposed new name of the petitioner so nearly resembles that of the bank making the objection, as that its assumption and use by the former would be likely to prejudice the rights or the interests of the latter."

Upon the trial of this case, counsel for plaintiff introduced considerable evidence to show that there had been confusion in the minds of patrons of the two institutions as to identity. The evidence in this respect refers to mistakes in delivering papers to the plaintiff which were intended for the defendant, telephone messages to the plaintiff which were intended for the defendant, letters and other documents delivered through the mail to the plaintiff, meant for the defendant, loan application blanks of the defendant which were left with the plaintiff. So far as I recall, there was no evidence offered showing that any one tried to transact business with the defendant that was intended for the plaintiff. This evidence, of course, was competent as bearing upon the question as to whether there exists a reasonable probability of confusion to the damage of the plaintiff by reason of the similarity of the names of the parties. My own view of this evidence is that such confusion as was shown was the result of carelessness or ignorance and would not have occurred had the parties exercised reasonable care or intelligence in determining the proper institution. Counsel for the plaintiff refers to the case of *Rochester Savings Bank* v. *Rochester Savings & Loan Assn.* (170 Misc. 983) as specific authority for the relief asked by the plaintiff. This case, however, may be distinguished from the present action. In that case the defendant was first organized in 1886 under the name of Profit Loan Association. This was changed in 1936 to Profit Savings & Loan Association, and again was changed on August 1, 1938, to Rochester Savings & Loan Association. After the last change in name was made, the defendant put up a sign over its place of business, which was a block and a half away from plaintiff's business house, containing the words " Rochester

Savings." The court in that case, after reciting this fact, stated (p. 986): " The simple fact, whether defendant intended it so or not, is that the same has a tendency to deceive customers of average intelligence into thinking that defendant is identified with plaintiff. That ought to be and is decisive." Nothing like this was shown in the present case. It seems to me that the question involved here is whether the use of the word " Yonkers " in connection with the words " Savings & Loan Association " produces a name so similar in sound and appearance to that of the plaintiff's name as to be calculated to cause persons of ordinary intelligence and experience to believe that the defendant is a branch of or otherwise connected with the plaintiff. In my opinion, this question must be decided in the negative.

The defendant's counsel has cited a large number of instances referring to savings and loan associations and savings banks located in other communities in this State where the names are similar. This, of course, is not decisive in any respect for, as pointed out by plaintiff's counsel, some of these similar names may be improperly used, never having been contested. However, in some of the instances cited, the names apparently similar were allowed by the court. In such cases it amounts to a record of the judgment of the court on the question under the circumstances shown. As already stated, I base my decision in this case upon my belief, under all the circumstances shown, that the use of defendant's name is not calculated to cause persons of ordinary intelligence and experience to believe that the defendant is a part of or connected with the plaintiff, and that no unfair competition has been shown.

The complaint should be dismissed upon the merits, with costs. Settle decision on notice, at which time I will pass upon any proposed findings which the plaintiff may wish to present.